**Ty Hyderally, Esq. (ID#023231993)**
**Hyderally & Associates, P.C.**
33 Plymouth Street, Suite 202
Montclair, New Jersey 07042
Telephone (973) 509-8500
Facsimile (973)509-8501
*Attorneys for Plaintiff, Michelle Ferreira*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELLE FERREIRA,** | **Hon. Madeline Cox Arleo** |
| **PLAINTIFF,** | |
| **VS.** | **Civil Action No.: 2:22-cv-02648-MCA-AME** |
| **SALVASEN HEALTH, BLACKHAWK CLAIMS SERVICES, JOHN DOES 1-10, AND XYZ CORPS. 1-10,** | **Return Date: July 18, 2022** |
| **DEFENDANTS.** | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT SALVASEN HEALTH'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(6), AND 9(b)

Of Counsel:
    Ty Hyderally, Esq.

On the Brief:
    Ty Hyderally, Esq.
    Jennifer Weitz, Esq.

# **Table of Contents**

A. BRIEF

TABLE OF
CONTENTS……………………………………………………….……i

TABLE OF
AUTHORITIES………………………………………….…………….…..ii

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF FACTS...………………………………..……………1

LEGAL ARGUMENT AGAINST MOTION TO DISMISS ...................................3

I.   THE COURT CAN EXERCISE PERSONAL JURISDICTION
     OVER SALVASEN DUE TO SALVASEN'S CONTACTS
     WITH NEW JERSEY......................................................................4

     A. STANDARD OF REVIEW FOR A RULE 12(B)(2)
        MOTION TO DISMISS FOR LACK OF PERSONAL
        JURISDICTION…………………………………………………4

     B. SALVASEN DELIBERATELY AND REPEATEDLY
        REACHED INTO NEW JERSEY………………………………………5

II.  STANDARD OF REVIEW FOR A RULE 12(B)(6)
     MOTION TO DISMISS FOR FAILURE TO
     STATE A CLAIM .........................................................................7

     A. THE COMPLAINT SATISFIES THE PURPOSE OF RULE 9(B)……..8

     B. THE COMPLAINT'S GROUP PLEADING OF DEFENDANTS

SHOULD BE CONSTRUED AGAINST SALVASEN,
A SOPHISTICATED CORPORATE ENTITY…………………………..10

C. JURISDICTIONAL DISCOVERY IS APPROPRIATE AS
FERREIRA'S CLAIMS ARE NOT CLEARLY FRIVOLOUS………..11

III.  A CONTRACT EXISTED BETWEEN THE PARTIES…………………..13

A. SALVASEN BREACHED ITS CONTRACTUAL DUTY
TO FERREIRA………………………………………………………...………..13

B. SALVASEN'S ILLEGAL CONDUCT BREACHED
THE IMPLIED COVENANT OF GOOD FAITH AND
FAIR DEALING…………………………………………………………..17

C. THE CONDUCT OF BOTH PARTIES EVIDENCES THE
EXISTENCE OF AN IMPLIED CONTRACT………………………...18

D. FERREIRA'S COMMON-LAW FRAUD CLAIMS
SATISFY RULE 9(B)'S PURPOSE…………………………………19

E. FERREIRA RELIED ON SALVASEN'S CONFIRMATION
OF HER HEALTH INSURANCE TO HER DETRIMENT…………...23

F. FERREIRA'S CLAIM UNDER THE NEW JERSEY
CONSUMER FRAUD ACT SHOULD BE UPHELD,
BASED ON THE FINDINGS IN THE CONSENT DECREE…...……24


CONCLUSION…………………………………………………………...……..27

### Table of Authorities

<u>**Cases**</u>

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009)……………………………….........................7

<u>Bel Atl. Corp. v. Twombly</u>,
    550 U.S. 544 (2007)………………………….........................7

<u>Block v. Seneca Mortg. Servicing</u>,
    221 F. Supp. 3d 559 (D.N.J. 2016)……………………........................14, 16

<u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>,
    182 N.J. 210 (2005)………………………………………………………..17

<u>Burger King v. Rudzewicz</u>,
    471 U.S. 462 (1985)………………………………….........................4

<u>Casperson v. Oring</u>,
    441 F. Supp. 3d 23 (D.N.J. 2020)……………………........................11

<u>Cotter v. Newark Hous. Auth.</u>,
    422 F. App'x 95 (3d Cir. 2011)…………………………........................14

<u>CRA, Inc. v. Ozitus Int'l, Inc.</u>,
    No. 16-5632, 2017 U.S. Dist. LEXIS 99453, 2017 WL 2779749
    (D.N.J. June 27, 2017)………………………………………….…….18

<u>Craftmatic Sec. Litig. v. Kraftsow</u>,
    890 F.2d 628 (3d Cir. 1989)……………………………….............9, 11

<u>Cinalli v. Kane</u>,
    191 F. Supp. 2d 601 (E.D. Pa.2002)……………………..........................10

<u>Coastal Grp., Inc. v. Westholme Partners</u>,
    Civil Action No. 94-3010(MTB), 1996 U.S. Dist. LEXIS 23137
    (D.N.J. Oct. 3, 1996) …………………………………..………………..23

<u>Dist. 1199P Health & Welfare Plan v. Janssen, L.P.</u>,

Civil Action No. 06-3044 (FLW), 2008 U.S. Dist. LEXIS 103526
(D.N.J. Dec. 23, 2008). …………….............................................................22

Dougherty v. Drew Univ.,
534 F. Supp. 3d 363 (D.N.J. 2021)……………………...........................13

Duffy v. Charles Schwab & Co.,
123 F. Supp. 2d 802 (D.N.J. 2021)……………………...........................18

Durr Mech Constr., Inc. v. PSEG Fossil, LLC.,
516 F. Supp. 3d 407 (D.N.J. 2021)……………………………………..22

Dzielak v. Whirlpool Corp.,
26 F. Supp. 3d 304 (D.N.J. 2014)……………............................................14

Eason v. Linden Avionics, Inc.,
706 F. Supp. 311 (D.N.J. 1989)……………………………………....4, 5

Fittipaldi v. Monmouth Univ.,
Civil Action No. 20-05526 (MAS) (ZNQ),
2021 U.S. Dist. LEXIS 103578 (D.N.J. June 1, 2021),……………...........18

Ford Motor Co., v. Mont. Eighth Judicial Dist. Court,
141 S. Ct. 1017 (2021)……………………………………………….…..4

Frederico v. Home Depot,
507 F.3d 188 (3d Cir. 2007)…………………………………………..23

Gray v. BMW of N. Am., LLC,
2014 U.S. Dist. LEXIS 133337, 2014 WL 4723161
(D.N.J. Sept. 23, 2014)…………………………………………………..10

Harfouche v. Wehbe,
950 F. Supp. 2d 766 (D.N.J. 2013)……………………………...............6

Hills v. Bank of Am.,
2014 U.S. Dist. LEXIS 89473 (D.N.J. June 30, 2014)………………….…14

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997)…………………………...............................13

Jurista v. Amerinox Processing, Inc.,
 492 B.R. 707 (D.N.J. 2013)……………………………………...............9

Kaiser Found. Health Plan, Inc. v. Medquist, Inc.,
 No. 08-4376 (JBS), 2009 U.S. Dist. LEXIS 2912
 (D.N.J. Apr. 8, 2009)…………………………………………................8

Knight v. New Eng. Mut. Life Ins. Co.,
 220 N.J. Super. 560 (App. Div. 1987)…………….....................................14

Lee v. Carter-Reed Co., L.L.C.,
 203 N.J. 496 (2010)…………………………….......................................25

Lloyd v. Herchakowski (Re: Andrew Herchakowski),
 Nos. 10-49287, 11-1679, 2013 Bankr. LEXIS 1758
 (Bankr. D.N.J. Apr. 29, 2013)…………………………….....................16

Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,
 107 F.3d 1026 (3d Cir. 1997)…………………………......................12

Metcalfe v. Renaissance Marine, Inc.,
 566 F.3d 324 (3d Cir.
 2009)………………………………………………………………...4

MDNet, Inc. v. Pharmacia Corp.,
 147 F. App'x 239 (3d Cir. 2005)…...……………………………....…...10

N.J. Sports Prods. v. Don King Prods.,
 97-Civ.-1175 (WGB), 1997 U.S. Dist. LEXIS 23209
 (D.N.J. Oct. 27, 1997)……………………………………….…….…...9

Ontel Prods. Corp. v. Mindscope Prods.,
 220 F. Supp. 3d 555 (D.N.J. 2016)…………………………..……………..4

Powell v. Seton Hall Univ.,
 Civil Action No. 2:21-cv-13709-WJM-JSA,
 2022 U.S. Dist. LEXIS 75590 (D.N.J. Apr. 26, 2022)……………………18

Ponzio v. Mercedes-Benz USA, LLC,

447 F. Supp. 3d 194 (D.N.J. 2020)…………………………..…………10

Quigley, Inc. v. Miller Family Farms,
226 N.J. Super. 283 (App. Div. 1993)………………….…………...…..23

Roberts v. Cowgill,
316 N.J. Super. 33 (App. Div. 1998)…………….......................................27

S. Broward Hosp. Dist. V. MedQuist,
516 F. Supp. 2d 370 (D.N.J. 2007)………………………………….........7

Savarese v. Pyrene Mfg. Co.,
9 N.J. 595 (1952)……………………………………………..…...............14

Scheuer v. Rhodes,
416 U.S. 232 (1974)………………………………….....................................7

Shuker v. Smith & Nephew, PLC,
885 F.3d 760 (3d Cir. 2018) ……………………………..………...22-23

State v. U.S. Steel Corp.,
22 N.J. 341 (1956) …………………….…………………..……………24

Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.,
2011 U.S. Dist. LEXIS 19754 (D.N.J. Feb. 28, 2011) …................................7

Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co., L.L.C.,
191 N.J. 1 (2007)……………………………………………….…..16

Toys "R" Us, Inc. v. Step Two S.A.,
318 F.3d 446, 456 (3d Cir. 2003)…………………………………..12

Waste Mgmt. v. Admiral Ins. Co.,) .,
138 N.J. 106 (1994) ………………………………….…………….………..6

Walden v. Fiore,
571 U.S. 277 (2014)……………………………………………………..4

Weichert Co. Realtors v. Ryan,
    128 N.J. 427 (1992)…………………………….................................13

Wilson v. Amerada Hess Corp.,
    168 N.J. 236 (2001)…………………………………………………...17

Yu-Chin Chang v. Upright Fin. Corp.,
    No. 19-cv-18414 (KM/ JBC), 2020 U.S. Dist. LEXIS 15009
    (D.N.J. Jan. 27, 2020). …………………………………………………..11

## Statutes

New Jersey Consumer Fraud Act,
    N.J.S.A. §56:8 et seq.…………………………………....…… .1, 24, 25, 26

## Rules

Fed. R. Civ. Pro. 9(b)…….……………………………......…8, 9, 12, 19, 20, 26
Fed. R. Civ. Pro. 12(b)(2)……………………………….…………………….4
Fed. R. Civ. Pro. 15(a)……………………………………………………….12

## Treatises

Restatement (Second) of Contracts……………………………...………14, 17

3 Pomeroy on Equity Jurisprudence (5th ed. 1941)………………………….24

## PRELIMINARY STATEMENT

Defendant, Salvasen Health, ("Salvasen") has moved this Court to dismiss the Complaint of Plaintiff, Michelle Ferreira ("Ferreira"), offering various arguments intended to immunize Salvasen from its intentional bad acts. However, when, as here, crucial facts are only within a defendant's knowledge or control, and such facts have been withheld from the plaintiff, it would be a manifest injustice to Ferreira to deprive her of any potential for redress of Salvasen's harms. Salvasen's motion is the logical last step in its efforts to defraud Ferreira into paying for non-existent healthcare, conceal its activities from Ferreira despite her diligent efforts to obtain information, and then use its own stonewalling and obfuscation of facts as a rationale for attempting to deny Ferreira an opportunity to be heard. As discussed further below, this Court should deny defendant Salvasen's motion to dismiss the Complaint with prejudice. Concurrently, Plaintiff asks this Court to grant its motion to amend the Complaint to assert additional facts in support of the claims, based on the issuance of a Consent Decree entered into by Salvasen with the Texas Department of Insurance on April 26, 2022, information that was not available at the time the Complaint was filed.

## STATEMENT OF FACTS

On or about April 24, 2020, Ferreira enrolled in a healthcare plan offered by Salvasen. (Affidavit of Michelle Ferreira ("Ferreira Aff."), ¶2). Ferreira received

an identification card via regular mail to her house in New Jersey bearing an effective date of May 1, 2020, without any plan documents. (Ferreira Aff., ¶6). Ferreira confirmed her enrollment when she saw her checking account debited, with the vendor name "Premier Health" as the payor. (Ferreira Aff., ¶5). The plan Ferreira enrolled in stated that it provided health insurance coverage to New Jersey residents for providers in New Jersey. (Ferreira Aff., ¶3). Accordingly, Ferreira began treating with providers in New Jersey, as well as in New York. (Ferreira Aff., ¶8). As is the norm, Ferreira's treating doctors verified Ferreira's insurance coverage as necessary prior to rendering services. (Ferreira Aff., ¶9). Thus, Ferreira had no reason to suspect that her coverage was in any way lacking. (Ferreira Aff., ¶14). On at least one occasion a Salvasen representative called Ferreira, to confirm coverage of one procedure that had been prescribed by her doctor, and explain policy limits for another procedure. (Ferreira Aff., ¶10).

Ferreira added her spouse to her insurance in November 2020 and received new insurance cards, also mailed to her home address in New Jersey. (Ferreira Aff., ¶13). Thus, Ferreira believed she and her spouse had medical insurance in New Jersey. (Ferreira Aff., ¶14). It was not until Ferreira started receiving bills from her New Jersey providers that she contacted Salvasen in June 2021 and was told that her coverage was discontinued the previous March. (Ferreira Aff., ¶¶14-15).

On September 29, 2021 Ferreira emailed the address provided for Member Services and asked for "the summary, full plan documents and a copy of my entire file." (Ferreira Aff., ¶16). She received a response on September 30, 2021, giving her a phone number to call with the caveat that "to proceed with any request, confirmation must be provided verbally." (Ferreira Aff., ¶17). Ferreira then tried calling that number repeatedly, with no success, as described in her follow-up email to Member Services on October 13, 2021. (Ferreira Aff., ¶18). In that same email Ferreira noted that she had sent a letter via certified mail to the address provided on her insurance card for the claims department, which was accepted and signed for, but she never received any of the information she requested. (Ferreira Aff., ¶19).

More recently, Ferreira learned that on April 26, 2021, all the various corporate entities operating under the name "Salvasen Health" entered into a Consent Decree with the Texas Department of Insurance. (Ferreira Aff., ¶20). The Consent Decree's findings of fact include the following: "Salvasen is not licensed to engage in the business of insurance in Texas or any other jurisdiction but has marketed its health insurance products nationwide." (Certification of Jennifer Weitz, Esq. ("Weitz Cert"), Exhibit 2).

## **ARGUMENT**

3

I.  THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER
    SALVASEN DUE TO SALVASEN'S CONTACTS WITH NEW JERSEY.

A.  STANDARD OF REVIEW FOR A <u>RULE 12(B)(2)</u> MOTION TO
    DISMISS FOR LACK OF PERSONAL JURISDICTION.

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant

to Fed. R. Civ. Pro. 12(b)(2), a plaintiff "need only establish a prima facie case of

personal jurisdiction" (<u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir.

2004)) and "may rely on the complaint, affidavits, or other competent evidence."

<u>Ontel Prods. Corp. v. Mindscope Prods.</u>, 220 F. Supp. 3d 555, 559 (D.N.J. 2016)

(quoting <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330, 51 V.I. 1219

(3d Cir. 2009)). Personal jurisdiction depends on the existence of "minimum

contacts" between a defendant and a forum, such that "the defendant should

reasonably anticipate being haled into court in the forum state." <u>Burger King Corp.</u>

<u>v. Rudzewicz</u>, 471 U.S. 462, 474 (1985).

It is well established that a court may exercise personal jurisdiction over a

defendant who deliberately "reached out beyond" its home—by, for example,

"exploi[ting] a market" in the forum State or entering a contractual relationship

centered there. <u>Ford Motor Co. v. Mont. Eighth Judicial Dist. Court</u>, 141 S. Ct.

1017, 1025 (2021) (quoting <u>Walden v. Fiore</u>, 571 U. S. 277, 285 (2014)). New

Jersey courts take "an especially permissive approach to minimum contacts

analysis." <u>Eason v. Linden Avionics, Inc.</u>, 706 F. Supp. 311, 323 (D.N.J. 1989)

("'[J]urisdiction has been exercised wherever possible when a liberal and indulgent view of the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice'.") (internal cites omitted). As well, "[i]n New Jersey, the continuity of a defendant's activities is accorded more significance than the quantum of activities." Id.

### B. SALVASEN DELIBERATELY AND REPEATEDLY REACHED INTO NEW JERSEY.

Salvasen knowingly conducted business with Ferreira, a New Jersey resident, when Salvasen confirmed that it offered health insurance to New Jersey residents and Ferreira chose to enroll in Salvasen's plan. Certification of Michelle Ferreira ("Ferreira Cert"), ¶¶2, 4. Salvasen confirmed that it covered health care given by New Jersey doctors to New Jersey residents. Id., ¶3. Ferreira relied upon these representations in then paying Salvesen a monthly fee that Salvesen automatically deducted from her New Jersey bank account to provide health care coverage in New Jersey. Id., ¶5. The insurance cards issued to Ferreira initially, and those issued after Ferreira upgraded her plan to add her spouse, were all mailed to Ferreira at her home address in New Jersey. Id., ¶¶6, 11. Further Ferreira called Salvasen representatives, on several occasions, who confirmed that Salvesen did provide Ferreira health care coverage in New Jersey . Id., ¶7. In fact, Salvasen did provide health care coverage in New Jersey for a health care provider who provided health care services to Ferreira in New Jersey. Id., ¶11. Additionally,

Salvasen did provide health care coverage to Ferreira for a health care provider in New York who provided health care services to Ferreira. Id., ¶12.  On at least one occasion a Salvasen representative called Ferreira, to discuss coverage of one procedure prescribed for Ferreira and to explain policy limits for another. Id., ¶10.

Moreover, additional factors "may properly be weighed in determining whether those minimum contacts establish jurisdiction consistent with considerations of fair play and substantial justice." Waste Management v. Admiral Ins. Co., 138 N.J. 106, 121 (1994). Such factors include the State's interests in adjudicating the suit and the plaintiff's interest in obtaining relief. Id. Both Ferreira and New Jersey undoubtedly have an interest in obtaining payment on behalf of New Jersey medical providers for services rendered pursuant to Salvasen's representation of coverage.

An intentional act meant to create an actionable event in a forum state confers jurisdiction over the actor. Waste Management, 138 N.J. at 126 (quoting Calder v. Jones, 465 U.S. 783, 791 (1984). Based on Salvasen's intentional acts in New Jersey, this Court may properly exercise personal jurisdiction over Salvasen. However, even if this Court finds that Ferreira has not made the required showing to support personal jurisdiction, Ferreira respectfully asks the Court to permit jurisdictional discovery, as discussed below, as Ferreira's Complaint is clearly not frivolous.

## II. STANDARD OF REVIEW FOR A RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

Federal courts have recognized that a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), for failure to state a claim upon which relief may be granted, must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." S. Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 381 (D.N.J. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A complaint must "contain[s] sufficient factual matter…'to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007). This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of' the necessary element. Twombly, 550 U.S at 556.

The "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Tangible Value, LLC v. Town Sports Int'l Holdings, Inc., 2011 U.S. Dist. LEXIS 19754, at *6 (D.N.J. Feb. 28, 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 2009 (3d Cir. August 18, 2009)). Here, the Consent Decree Salvasen entered into shows "more than a sheer possibility that the defendant has act[ed] unlawfully."

Twombly, 550 U.S. at 556. Thus, Ferreira respectfully submits that it would be improper for this Court to grant Salvasen's motion.

## A. THE COMPLAINT SATISFIES THE PURPOSE OF RULE 9(B).

Ferreira's Complaint sounds in fraud, and is therefore governed by Fed. R. Civ. P. 9(b). The heightened pleading standard announced in Rule 9(b) should be applied "in accordance with the rule's underlying purpose…to provide defendants with notice of the precise misconduct surrounding the allegation of fraud asserted against it and …to guard against 'spurious allegations of immoral and fraudulent behavior.'" Kaiser Found. Health Plan, Inc. v. Medquist, Inc., No. 08-4376 (JBS), 2009 U.S. Dist. LEXIS 29124, at *16-18 (D.N.J. Apr. 8, 2009).

There is no doubt that Salvasen was on notice of its precise misconduct, as the allegations in Ferreira's complaint mirror the unauthorized conduct recited in the consent decree. See generally Weitz Cert., Exhibit "2" ("Consent Decree"). ("Salvasen's plans were marketed and sold as insurance." "[C]onsumers complained that, based on Salvasen's representations, the benefits they thought were covered by Salvasen's plans were not actually covered in the plan documents.") Moreover, far from the "spurious allegations" contemplated by the Rule, Ferreira's allegations are consistent with what tens of thousands of other individuals suffered as a result of Salvasen's misconduct. Id., ¶8. These allegations

were found to be credible by the relevant regulatory body, so much so that Salvasen was ordered to, and agreed to, wind down its business. Id., ¶16.

Moreover, federal courts have long held that focusing too much on the "particularity language" of Rule 9(b) is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 745 (D.N.J. 2013) (internal cites omitted). In a "flexible application of Rule 9(b)", a plaintiff does not have to specify the information known to the defendant, but must include with their allegations "facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 646 (3d Cir. 1989). To this point, Ferreira's Complaint recites the futile efforts she undertook to get information from Salvasen, and how such information is exclusively within Salvasen's control; the Consent Decree demonstrates that the charges against Salvasen are not baseless.

"The central inquiry" in a complaint governed by Rule 9(b) "is whether the complaint is sufficiently precise to place the defendant on notice[.]" N.J. Sports Prods. v. Don King Prods., 97-Civ.-1175 (WGB), 1997 U.S. Dist. LEXIS 23209, at *40 (D.N.J. Oct. 27, 1997). The Complaint's factual allegations are exactly what Salvasen has already acknowledged as wrongdoing; thus, Salvasen cannot use an

alleged lack of precision in Ferreira's complaint to convincingly claim lack of notice of its malfeasance.

### B. THE COMPLAINT'S GROUP PLEADING OF DEFENDANTS SHOULD BE CONSTRUED AGAINST SALVASEN, A SOPHISTICATED CORPORATE ENTITY.

Generally, "[w]hen multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." MDNet, Inc. v. Pharmacia Corp., 147 F. App'x 239, 245 (3d Cir. 2005) (citing Cinalli v. Kane, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002)). However, where the alleged fraud is "perpetrated by sophisticated corporate entities that are related to each other, [Plaintiff] need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard." Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 226 (D.N.J. 2020) (quoting Gray v. BMW of N. Am., LLC, 2014 U.S. Dist. LEXIS 133337, 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014)).

Here, the relationship between Salvasen and co-defendant Blackhawk Claims Services was confirmed by Salvasen itself, which explained that "Blackhawk Claims Services, Inc. managed the claims, marketing and sale, and premium collection for Ms. Ferreira's plans" when queried by the New Jersey Department of Banking and Insurance (Weitz Cert., Exhibit "3".) This delineation of responsibilities between the two entities means neither would be "left in the dark

about who did which." <u>Yu-Chin Chang v. Upright Fin. Corp.</u>, No. 19-cv-18414 (KM/ JBC), 2020 U.S. Dist. LEXIS 15009, at *7 (D.N.J. Jan. 27, 2020). Furthermore, as the Court noted in <u>Yu-Chin Chang</u>, "[t]he precise relation between the two defendants is not a fact in control of the plaintiffs, but can easily be explored in discovery." <u>Id.</u>

"Courts should be sensitive to the fact that a rigid application of the rule could allow for sophisticated defendants to conceal the details of their fraud entirely within their own knowledge or control making it impossible for a plaintiff to satisfy the standard." <u>Craftmatic</u>, 890 F.2d at 645. As discussed below, the allegations in the Complaint satisfactorily address the elements constituting fraud: false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage. <u>Caspersen v. Oring</u>, 441 F. Supp. 3d 23, 34 (D.N.J. 2020) <u>Infra, III.C.</u> However, even if this Court finds that the Complaint does not adequately identify Salvasen's conduct in order to place Salvasen on notice and thus confer personal jurisdiction, Plaintiff respectfully requests an opportunity to conduct jurisdictional discovery, especially in light of the Consent Decree, and cure any deficiencies.

## C. JURISDICTIONAL DISCOVERY IS APPROPRIATE AS FERREIRA'S CLAIMS ARE NOT CLEARLY FRIVOLOUS.

When a defendant claims its contacts with the forum fail to allow for jurisdiction over it, courts shall permit jurisdictional discovery so long as the plaintiff's jurisdictional claims are not "clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)). Absent a clearly frivolous claim, "discovery on the issue of jurisdiction is generally allowed in order to aid the plaintiff in discharging its burden…." Mass Sch. of Law, 107 F.3d at 1042.

Based on the information provided in co-defendant Blackhawk Claims Services' Motion to Dismiss, Salvasen was the party that affirmed the availability of health insurance in New Jersey and received Ferreira's premiums. See Declaration of Roy Franklin Anding, ¶¶9, 10 ("Blackhawk…is simply a third-party vendor to Defendant Salvasen Health that simply provides claims analysis and other minor back-office support systems, but all claim's [sic] decisions and claims payments are made by Defendant Salvasen Health and not Blackhawk.") Jurisdictional discovery would help clarify the role of each co-defendant. As well, Ferreira's claims are not frivolous, as demonstrated by the Consent Decree.

In the alternative, Plaintiff respectfully requests leave to file an amended Complaint pursuant to Fed. R. Civ. P. 15(a), to satisfy the pleading standards of Fed. R. Civ. P. 9(b). Rule 15(a) provides that such leave "shall be freely given" by

a court "when justice so requires." Leave to amend may be denied on grounds such as undue delay, bad faith, dilatory motive, prejudice, or futility.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (internal cites omitted). However, in the instant matter, an amended Complaint would not present any of the above concerns, and would help preserve any possibility of recovery Ferreira may have. As Salvasen's plans were not subject to regulation by either the Texas Department of Insurance or the New Jersey Department of Banking and Insurance, there is no administrative remedy for Ferreira to pursue. (Consent Decree, ¶9; Weitz Cert., Exhibit "3").

III. A CONTRACT EXISTED BETWEEN THE PARTIES.
    A. SALVASEN BREACHED ITS CONTRACTUAL DUTY TO FERREIRA.

A breach of contract claim requires "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages. Dougherty v. Drew Univ., 534 F. Supp. 3d 363, 383 (D.N.J. 2021). New Jersey courts recognize a valid contract when there is (1) a meeting of the minds; (2) offer and acceptance; (3) valid consideration; and (4) reasonably certain contract terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Courts will infer a contract based on the circumstances. Doughterty, 534 F. Supp. 3d at 383.

A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract. <u>Knight v. New Eng. Mut. Life Ins. Co.</u>, 220 N.J. Super. 560, 565 (App. Div. 1987). An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" <u>Cotter v. Newark Hous. Auth.</u>, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting <u>Restatement (Second) of Contracts</u> § 24 (1981)). The consideration to support a promise may be either a benefit accruing to the promisor of a loss or disadvantage to the promisee. <u>Block v. Seneca Mortg. Servicing</u>, 221 F. Supp. 3d 559, 574 (D.N.J. 2016). (internal cites omitted). Finally, an enforceable contract "must be sufficiently definite in its terms that the performance to be rendered by each party can be reasonably ascertained." <u>Hills v. Bank of Am.</u>, 2014 U.S. Dist. LEXIS 89473, at *12-13 (D.N.J. June 30, 2014) (quoting <u>Savarese v. Pyrene Mfg. Co.</u>, 9 N.J. 595 (N.J. 1952)).

The Complaint establishes the existence of a valid contract between Ferreira and Salvasen. First, there was a meeting of the minds when Ferreira contacted Salvasen about obtaining individual health insurance, and Salvasen confirmed that it offered health insurance in New Jersey. Compl., ¶¶13-14. Ferreira then accepted Salvasen's offer of health insurance by signing the forms provided by Salvasen to effect coverage. <u>Id.</u>, ¶15. Subsequently, Salvasen began to debit Ferreira's bank

account so that Salvasen would receive payment for Ferreira's health insurance premiums. Id., ¶17. Salvasen then did in fact receive payment for Ferreira's health insurance premiums. Id., ¶17. Ferreira's account continued to be debited regularly, which to Ferreira seemed indicative of the ongoing nature of the coverage Ferreira thought she purchased. Id., ¶19.

While Salvasen maintains that the Complaint does not identify a contract, or the specific contractual provisions at issue, the Complaint makes clear that Ferreira signed paperwork given to her, and that Ferreira was never given a copy of this paperwork. Id., ¶¶15, 39. Thus, any required facts allowing for more precise identification are exclusively within Salvasen's control and were purposefully withheld from Ferreira. See Ferreira Cert., ¶19.  Further, the Consent Decree also states that "Salvasen solicited and sold health insurance policies and certificates of coverage…nationwide." Consent Decree, Unauthorized Conduct, ¶8. Therefore, if additional facts are necessary for a proper identification of the contract and/or specific contractual provisions at issue, Plaintiff respectfully submits that this Court should allow for an amended Complaint and allow discovery, rather than rewarding Salvasen's demonstrated misdeeds.

The Complaint goes on to recite that "Ferreira…was receiving bills from…providers" and that "the providers had verified insurance coverage prior to rendering services." Compl., ¶¶32-33. With the exception of two claims, Salvasen

simply didn't cover Ferreira's medical expenses. This, too, echoes the Consent Decree, which indicates that "consumers complained that, based on Salvasen's representations, the benefits they thought were covered by Salvasen's plans were not actually covered in the plan documents." Consent Decree, ¶12. Thus, any purported notice Salvasen required to notice it of its contractual obligations is redundant to what it has already acknowledged vis-à-vis the Consent Decree.

Lastly, the Complaint lists the bills Ferreira has received from medical providers during the time Ferreira believed she had medical coverage from Salvasen. Compl., ¶¶22-30. These bills are "a reasonably certain consequence of the breach," as Ferreira's lack of actual medical insurance meant she would be responsible for paying her medical providers, and therefore meet the standard recognized by the courts. Lloyd v. Herchakowski (Re: Andrew Herchakowski), Nos. 10-49287, 11-1679, 2013 Bankr. LEXIS 1758, at *9 (Bankr. D.N.J. Apr. 29, 2013) (citing Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 15 (2007).

Further, contrary to Salvasen's assertions, federal courts have also recognized certain unquantifiable damages. See, e.g., Block, 221 F. Supp. at 577 ("[A]s a result of [defendant's] breach, Plaintiffs suffer and continue to suffer damages, including increased interest payments, longer loan payoff times, deterrence from timely seeking other remedies, damage to their credit, additional income tax

liability, and costs and expenses incurred to modify their loan. . .. Plaintiffs have sufficiently alleged damages resulting from [defendant's] breach.") (internal cites omitted.) Thus, this Court may properly consider the damages claimed in the Complaint's breach of contract count.

### B. SALVASEN'S ILLEGAL CONDUCT BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

It is black letter law that "[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224, (2005) (quoting Restatement (Second) of Contracts § 205 (1981)). Good faith conduct is conduct that does not "'violate community standards of decency, fairness or reasonableness.'" Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001) (quoting Restatement (Second) of Contracts, § 205 comment a). As a general rule, "[s]ubterfuges and evasions" in the performance of a contract violate the covenant of good faith and fair dealing. Brunswick Hills Racquet Club, 182 N.J. at 225 (quoting Restatement (Second) of Contracts, § 205 comment d.). Thus, Salvasen's acknowledged wrongdoing, lack of notice to Ferreira as to the discontinuation of Ferreira's policy, and its continual "subterfuges and evasions," more than suffice to demonstrate a lack of good faith conduct.

Pursuant to Ferreira's motion for leave to amend the Complaint, and in recognition of the fact that the factual allegations in support of an implied covenant of good faith are the same as those in support of the breach of contract claim (see CRA, Inc. v. Ozitus Int'l, Inc., No. 16-5632, 2017 U.S. Dist. LEXIS 99453, 2017 WL 2779749, at *7 (D.N.J. June 27, 2017)), Ferreira will withdraw Count II of the Complaint. Ferreira respectfully requests that this Court consider Salvasen's egregious wrongdoing in support of the Complaint's breach of contract claim.

## C. THE CONDUCT OF BOTH PARTIES EVIDENCES THE EXISTENCE OF AN IMPLIED CONTRACT.

Proof of an implied contract requires the same showing as for an express contract: mutual assent, consideration, legality of object, and legal capacity of the parties. Powell v. Seton Hall Univ., Civil Action No. 2:21-cv-13709-WJM-JSA, 2022 U.S. Dist. LEXIS 75590, at *32 (D.N.J. Apr. 26, 2022) (quoting Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 818 (D.N.J. 2000).) However, proof of an implied contract may be inferred from the conduct of the parties, rather than a verbal or written expression. Id. (citing Fittipaldi v. Monmouth Univ., Civil Action No. 20-05526 (MAS) (ZNQ), 2021 U.S. Dist. LEXIS 103578 (D.N.J. June 1, 2021), at *4).

An implied-in-law contract is imposed "for the purpose of bringing about justice." Duffy, 123 F. Supp. 2d at 814. Salvasen is correct that Ferreira is not

seeking an implied-in-law contract; this would be of no help whatsoever to Ferreira, since Salvasen has been disallowed from offering insurance. (See generally Consent Decree). However, this Court can find an implied-in-fact contract based on both Salvasen's and Ferreira's actions. First, Ferreira inquired about obtaining health insurance in New Jersey, and Salvasen confirmed its ability to provide such insurance. Compl., ¶¶13-14. Salvasen did in fact provide coverage for two health care providers. Id., ¶¶43, 44. Salvasen denied coverage for all other health care providers, without reason or explanation. Id., ¶45 Ferreira assented to electronic debiting of her checking account, and was debited in amounts that matched the premiums she expected to pay for such coverage. Id., ¶¶16, 19. Ferreira then received insurance cards at the commencement of her coverage. Id., ¶18. If Salvasen had not made an offer of health insurance, why would Ferreira agree to pay premiums? And what else would Ferreira be paying for, if not the healthcare she inquired about? Further, Ferreira respectfully submits that any additional facts needed in support of this claim may be supplied through jurisdictional discovery. Even if this Court finds lack of support for an express contract, it may reasonably find the existence of an implied contract, and that Salvasen breached it, as noted above. Supra III, III.A.

### D. FERREIRA'S COMMON-LAW FRAUD CLAIMS SATISFY RULE 9(B)'S PURPOSE.

For the sake of judicial economy, Ferreira adopts Salvasen's argument as to the required showing for Ferreira's fraudulent inducement and fraud claim. As a threshold matter, it is indisputable, based on the plain language of the Consent Decree, that Salvasen's actions were fraudulent. First, Salvasen misrepresented a past fact, specifically, that it was authorized to provide health insurance in New Jersey. Compl., ¶14. Second, Salvasen knew this representation was false. Id., ¶¶35. Third, Salvasen intended for Ferreira to rely on this representation, in order to collect premiums from Ferreira. Id., ¶16. Fourth, Ferreira relied on this misrepresentation, based on communication with Salvasen and the issuance of an insurance card to Ferreira. Id., ¶¶17-18, 21. Lastly, Salvasen's misrepresentation resulted in Ferreira's receiving medical bills for services she thought were included in her plan. Id., ¶ 32.

As noted above, Ferreira's allegations are far from unsubstantiated. Supra, II.A. Similarly, as the Complaint's allegations match the conduct described in the Consent Decree, Salvasen cannot claim lack of notice of its "precise misconduct." Id. Further, Ferreira attempted to get copies from Salvasen of the documents that would show the existence and details of her plan, but was unsuccessful. Compl., ¶¶39-42. If this Court finds that additional facts are warranted to satisfy Rule 9(b), Ferreira respectfully submits that leave to file an amended Complaint is the appropriate response, rather than a granting of Salvasen's motion. Supra, II.C.

The Consent Decree is also adequate support for a finding of fraudulent intent as noted above. Ferreira has not pled malice, contrary to Salvasen's argument. Def. Br., 22. Ferreira has pled knowledge. Compl., ¶¶ 74, 87, 99, 111. Salvasen knew its statements to Ferreira were inaccurate, as it did not have a license to "engage in the business of insurance in …any…jurisdiction." Consent Decree, Unauthorized Conduct, ¶7. Further, during the relevant time period, Salvasen "solicited and sold health insurance policies and certificates of coverage to approximately 65,000 consumers nationwide." Id., ¶8. Salvasen's claim that the Complaint fails to sufficiently identify Salvasen's precise misconduct is unavailing, when the misconduct described in the Complaint is exactly what is recited in the Consent Decree.

Likewise, the Complaint is clear as to what steps Ferreira took based upon Salvasen's false representations, when they were taken, and why they were justified. Compl., ¶¶21-29. An identification of "who specifically Ferreira paid, and what insurance product or coverage she allegedly bought" is precisely the type of fact within Salvasen's knowledge and/or control, and, given Ferreira's efforts to get information from Salvasen, should not be manipulated by Salvasen to undermine Ferreira's fraud claim.

Finally, the Complaint alleges a clear causal connection between Salvasen's intentional misrepresentation and Ferreira's damages, by linking Salvasen's

misrepresentation to Ferreira's subsequent decision to treat with medical providers. It is axiomatic that if not for Salvasen's misrepresentations, leading to Ferreira's reasonable belief that she had healthcare coverage, Ferreira would not have incurred medical charges for which she would be held liable. That Salvasen chose to pay on two claims, out of the many submitted to it, and provided Ferreira with no explanation or even acknowledgement of the claims it did not process, is yet another example of how Salvasen kept Ferreira in the dark about her coverage.

Under the "flexible standard" announced by the Craftmatic court, a plaintiff's allegations must include the nature and scope of her efforts to obtain, before filing the complaint, the information needed to plead with particularity. Dist. 1199P Health & Welfare Plan v. Janssen, L.P., Civil Action No. 06-3044 (FLW), 2008 U.S. Dist. LEXIS 103526, at *46 (D.N.J. Dec. 23, 2008). Accordingly, the Complaint lists Ferreira's efforts to obtain information from Salvasen, information that should have been provided to Ferreira, and Salvasen's successful deflection of those efforts.

"The bottom-line inquiry is whether the plaintiff "'inject[ed] precision or some measure of substantiation into a fraud allegation' and [] state[d] 'the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" Durr Mech. Constr., Inc. v. PSEG Fossil, LLC, 516 F. Supp. 3d 407, 421 (D.N.J. 2021); see also Shuker v.

Smith & Nephew, PLC, 885 F.3d 760, 778 (3d Cir. 2018) (quoting Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)). As Ferreira can substantiate her fraud allegation, and the allegations puts Salvasen on notice of its wrongful conduct—since the Complaint's allegations are virtually identical to the wrongful acts listed in the Consent Decree—this Court should maintain Ferreira's fraud and fraudulent inducement claims.

### E. FERREIRA RELIED ON SALVASEN'S CONFIRMATION OF HER HEALTH INSURANCE TO HER DETRIMENT.

Ferreira's detrimental reliance claim is cognizable under the doctrine of equitable estoppel. Under the doctrine of equitable estoppel, a plaintiff must allege (1) a misrepresentation of material fact, known to the party sought to be estopped but unknown to the plaintiff, (2) made with the intention or expectation that it will be relied upon, (3) and upon which the plaintiff reasonably relied, (4) to its detriment. Coastal Grp., Inc. v. Westholme Partners, Civil Action No. 94-3010(MTB), 1996 U.S. Dist. LEXIS 23137, at *21-22 (D.N.J. Oct. 3, 1996) (quoting Quigley, Inc. v. Miller Family Farms, 266 N.J. Super. 283, 296 (App. Div. 1993)). Promissory estoppel requires a plaintiff to allege a promise of future performance, whereas equitable estoppel requires a plaintiff to allege a misrepresentation of a material fact currently existing or having existed in the past. Id.

The Complaint alleges that Salvasen misrepresented its status as a health care provider properly licensed to provide healthcare in New Jersey. Compl., ¶98. Salvasen both expected and intended for this misrepresentation to be relied upon, and Ferreira, having no reason to doubt its veracity, reasonably relied on it. Id., ¶¶100-101. Ferreira's reliance has indeed been due to her detriment, as she has suffered various economic and non-economic damages as a result. Compl., ¶¶46, 103-108.

Further, equitable estoppel can arise from any type of "conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything." State v. U.S. Steel Corp., 22 N.J. 341, 358 (1956) (quoting 3 Pomeroy on Equity Jurisprudence § 802 (5th ed. 1941). Courts thus apply a broad definition when identifying the conduct at issue that gave rise to the detrimental reliance, so that Salvasen's description of its conduct as a promise, rather than a representation (or misrepresentation), does not absolve it from liability. As discussed above, the overwhelming number of Ferreira's claims submitted to Salvasen were not processed and not even acknowledged in any way. Supra, III.A.

F. FERREIRA'S CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT SHOULD BE UPHELD, BASED ON THE FINDINGS IN THE CONSENT DECREE.

The New Jersey Consumer Fraud Act ("CFA" or "the Act"), N.J.S.A. 56:8 et seq., provides a private right of action upon a showing that a merchant engaged in an unlawful practice, caused an ascertainable loss, and that there is "a causal relationship between the unlawful conduct and the ascertainable loss." Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 521 (2010). Under the CFA, an unlawful practice is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation … in connection with the sale or advertisement of any merchandise…." N.J.S.A. 56:8-2. The Act defines merchandise as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1.

As noted above, there are numerous facts that reflect that Salvasen engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation.  Salvasen represented that it was authorized to provide health care coverage in New Jersey (Ferreira Cert., ¶¶2-3).  Salvasen induced Ferreira and numerous other individuals to pay Salvasen monthly payments due to its fraudulent representations. (Id., ¶4; Consent Decree, ¶8). Salvasen made significant financial gains based upon its fraudulent practices of representing that it could provide health care coverage in New Jersey and other States. (Id.).   Salvasen was not authorized to provide health care coverage in New Jersey. (Ferreira Cert., ¶20). Salvasen knew that its representations were false

25

when they made these representations. Id., ¶21. Ferreira, a New Jersey resident, was thus fraudulently induced by the deception and fraud and misrepresentation of Salvasen to her detriment. Id., ¶¶4, 13.

Thus, Salvasen's misrepresentation that it was authorized to provide health care coverage in New Jersey, in connection with the sale of health insurance, is an unlawful practice under the CFA. With all due respect, Salvasen's insistence that these claims, too, lack specificity sufficient to satisfy the requirements of Rule 9(b) and fail to show it "engaged in specific unlawful conduct," is incredulous and specious. Salvasen's claims are contradicted by the Consent Decree findings of unauthorized conduct and the facts in the Complaint. Despite this, if this Court is unsatisfied as to the identification of Salvasen with regard to Rule 9(b), Ferreira respectfully requests to be able to submit an amended Complaint in light of the information set forth herein.

An ascertainable loss under the Act must contain enough specificity to give the defendant notice of possible damages. Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 335 (D.N.J. 2014). Ferreira has done so with specificity in the Complaint. Ferreira's ascertainable loss are the bills she incurred when she thought she had healthcare, losses that were caused by Salvasen's misrepresentations. Compl., ¶¶22-24, 28-30. Moreover, even in the absence of an ascertainable loss, a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and

costs if that plaintiff can prove that the defendant committed an unlawful practice. Roberts v. Cowgill, 316 N.J. Super. 33, 36 (App. Div. 1998). Ferreira can prove Salvasen committed an unlawful practice, based on the Consent Decree and the allegations in the Complaint.

The Complaint also clearly notes that Ferreira inquired, and was sold, health insurance. Compl., ¶¶13-15. For Salvasen to insist that Ferreira supply "the exact type and scope of insurance" that Salvasen claimed to be selling, or the insurance policy or terms of coverage, when they withheld this information from Ferreira even after she made multiple attempts to obtain it, is disingenuous and should not be credited.

<u>CONCLUSION</u>

Michelle Ferreira incurred substantial damages based on Salvasen's fraudulent conduct. This Court should not reward Salvasen's illegal acts and dismiss Ferreira's Complaint. Further, given the information in the Consent Decree, wherein it was affirmed that Salvasen was not licensed to provide healthcare in any jurisdiction, and that this information was not available at any time before Ferreira filed the Complaint, Ferreira respectfully submits that this Court shall grant leave to amend the Complaint if the Court finds any deficiencies in Ferreira's pleading.

Respectfully submitted,

Hyderally & Associates, P.C.

_____
Ty Hyderally, Esq.
For the Firm

33 Plymouth Street, Suite 202
Montclair, New Jersey 07042
Tel. (973) 509-8500
Attorneys for Plaintiff Michelle Ferreira

T:\Ferreira Michelle and Calisto Pedro\Pleadings\071822.Opp brief Salvasen MTD.doc

**Ty Hyderally, Esq. (ID#023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973)509-8501
*Attorneys for Plaintiff, Michelle Ferreira*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHELLE FERREIRA,**<br><br>**PLAINTIFF,**<br><br><br>**VS.**<br><br><br>**SALVASEN HEALTH, BLACKHAWK CLAIMS SERVICES, JOHN DOES 1-10, AND XYZ CORPS. 1-10,**<br><br>**DEFENDANTS.** | Hon. Madeline Cox Arleo<br><br>Civil Action No.: 2:22-cv-02648-MCA-AME<br><br>Return Date: August 15, 2022<br><br>**NOTICE OF CROSS-MOTION FOR LEAVE TO AMEND THE COMPLAINT** |

TO:    James P. Chou, Esq.
          Morritt Hock & Hamroff LLP
          1407 Broadway, Suite 3900
          New York, NY 10018
          *Attorneys for Defendant Salvasen Health*

PLEASE TAKE NOTICE that on August 15, 2022, or such other date and time set by the Court, the undersigned, counsel for Plaintiff Michelle Ferreira, shall apply to the Honorable Madeline Cox Arleo, U.S.D.J., United States District Court for the District of New Jersey sitting in Newark, New Jersey, for an Order Granting Plaintiff's Cross-Motion to Amend the Complaint; and

29

PLEASE TAKE FURTHER NOTICE that, in support of this application, Plaintiff shall rely upon the accompanying Brief in Opposition as well as on all other papers, certifications and pleadings on file with the Court in this matter.

A Proposed Order is also submitted herewith.

Hyderally & Associates, P.C.
Attorneys for Plaintiff

By: _____

Ty Hyderally, Esq.

Montclair, New Jersey
Dated: July 18, 2022

30

**Ty Hyderally, Esq. (ID#023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973)509-8501
*Attorneys for Plaintiff, Michelle Ferreira*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHELLE FERREIRA,**<br><br>**PLAINTIFF,**<br><br>**VS.**<br><br>**SALVASEN HEALTH, BLACKHAWK CLAIMS SERVICES, JOHN DOES 1-10, AND XYZ CORPS. 1-10,**<br><br>**DEFENDANTS.** | Civil Action<br>No.: 2:22-cv-02648-MCA-AME<br><br><br>**PROPOSED ORDER** |

This matter, having been brought before the Court on a motion filed by Hyderally & Associates, P.C., attorneys for Plaintiff Michelle Ferreira, and the Court having considered the papers filed and arguments made by counsel, and appearances having been entered as indicated below,

It is on this _____ day of _____, 2022,

**ORDERED** that Plaintiff Michelle Ferreira's Motion for Leave to File an Amended Complaint is hereby GRANTED.

_____

Honorable Madeline Cox Arleo, U.S.D.J.

\_\_\_\_\_ Motion Opposed

\_\_\_\_\_ Motion Unopposed

Appearances By: